HALLAM ELDRIDGE, ETC., *v.* A. T. BROMLEY'S EX'RS.

**Mortgages—Release—Representative Capacity.**

A release of a mortgage executed to one individually was held to be intended as a release of the party in her representative capacity, where she was not individually indebted to the releasors, but was indebted to them in her representative capacity, and all the circumstances clearly show the purpose and application of the release.

**Mortgages—Release—Consideration.**

Where the consideration of a release of a mortgage was that the releasors should hold a certain plantation, the release was not without consideration because the releasees already held the plantation under a decree of court, the effect of such decree being doubtful and the release agreement having the effect of quieting their title to the plantation.

**Cancellation of Instruments—Mistake of Fact.**

Equity will not grant relief to persons who execute a release of a mortgage upon a valuable consideration without fraud or misrepresentation, because of a mistake of fact, where they could by inquiry have ascertained the true state of facts.

APPEAL FROM FRANKLIN CIRCUIT COURT.

June 16, 1873.

OPINION BY JUDGE LINDSAY:

For the purpose of deciding the questions of law arising upon the general demurrer to appellant's petition, it may be assumed (independent of the judgment of the chancery court in Mississippi) that the notes and mortgage upon which such a judgment was founded are sufficiently described, and the undertaking evidenced by them sufficiently embodied in the petition to entitle appellants to a judgment for the amount left unsatisfied by the sale of the land made pursuant to said judgment, unless the release made and executed

by them to Frances A. Burnley, the executrix of the last will and testament of A. G. Burnley, deceased, on the 13th day of September, 1869, which release appellants set up in their petition and seek to avoid, precludes them from recovering.

Although this release is to Frances A. Burnley individually, her fiducial character not being mentioned therein, yet considering it in conjunction with the petition and the exhibits, it is perfectly manifest that the debts or claims intended to be released are identical with those set up in the petition. Individually, Frances A. Burnley owed Eldridge and Montgomery nothing. As the executrix of A. G. Burnley, deceased, she was or had been legally bound to make good to them out of the assets left by the decedent, the amount of their claims against him, in case such assets were sufficient for that purpose. Her letters to them, and in response to the proposition contained in the last of which the release was executed and delivered, refer in unmistakable terms to the indebtedness that she desired to arrange, and the paper states that the object intended to be accomplished by its execution was the release of Mrs. Frances A. Burnley from a further liability arising from the mortgage indebtedness formerly a lien on the Burnley plantation, so called, the said mortgage having been foreclosed, and a balance remaining due thereon. As Mrs. Burnley was under no individual liability on account of this mortgage indebtedness, and as she was under liability on account thereof as executrix of her deceased husband's will, the release must be treated as referring to her in that character and releasing her from liability in her fiducial capacity, or else regarded as a mere idle act, as purposeless as it would be useless if such were the case.

But appellants show that such was not the purpose of its execution by insisting in their petition as a ground of avoidance that they were misled by the letters of Mrs. Burnley as to the true condition of the estate of A. G. Burnley, deceased, and executed and delivered it under the erroneous impression and belief superinduced by those letters, that his estate was insolvent and that it would therefore be impossible for them to obtain or secure any further recovery on their claim.

The release to Mrs. Burnley operated as a release to the estate represented in part by her, although her co-representative, Robert H. Crittenden, executor, is not named therein.

The allegation that the release was executed without consideration

is introduced by the petition and exhibits. In her letter of September 6, 1869, Mrs. Burnley proposes in consideration for such release that appellants shall hold the plantation on which they had a mortgage and which had appreciated in value since the sale to more than the amount of their debt, and on the 15th of the same month this proposal was accepted by the execution and delivery of the release. It is not enough to answer that appellants already held the plantation under the decretal sale. They regarded the agreement, upon the part of Burnley's executrix, to acquiesce in such holding as a valuable consideration and so demonstrate it in the release. They were fully apprised of the extraordinary proceedings by which the judgment foreclosing their mortgage had been otherwise obtained, and had good reason to fear that the judgment and sale, if not absolutely void, were both liable to be avoided. From the record of the Mississippi chancery suit which is made an exhibit by appellants, it appears that a certain law firm supposed to represent the representatives, heirs and devisees of A. G. Burnley, deceased, endorsed upon the bill of reviews a waiver of process thereon, and an agreement that the appearance of their clients might be entered and a judgment rendered conforming to the prayer of the complainant's original bill.

The attorneys or firm signing this agreement did not profess to have authority to take either of these unusual steps, and the only evidence in the record tending to show that they had such authority is the unsworn statement of complainant's attorney that one of them had exhibited to him a paper, which in his opinion constituted "a full and sufficient power of attorney" and that he had learned from a third party that these attorneys were the legally constituted attorneys of the defendants.

It is further to be observed that notwithstanding this agreement no one ever did enter the appearance of the defendants or consent of record to the rendition of the judgment of sale. The entire proceeding was *ex parte,* and if the judgment is not absolutely void, we can very well see how the parties holding under it could regard and treat the abandonment by Beamley's personal representatives of the right to attack it as the surrender of a valuable right, and as in some degree quieting their title to a tract of land, worth much more than the amount of their bid, and the sum released including the taxes paid by them on the land.

The only right appellants can have to demand the payment to

them by Burnley's executors of the taxes that had accrued on the land prior to the decretal sale, must arise out of the stipulation in the mortgage that the land should be held for the payment of the notes thereby secured "without any abatement on account of taxes, or other assessments."

The release covers all liabilities arising from the mortgage indebtedness, and consequently embraces the claim for these taxes, it being in existence at the time it was executed. As a further ground of avoidance appellants claim that they were misled by the letters of Mrs. Burnley into the belief or impression that the estate of A. G. Burnley, deceased, was insolvent, and that it would be impossible for them to obtain or secure any further recovery on their claim, and that acting under this belief, and actuated by feelings of sympathy and friendship for Mrs. Burnley, they executed and delivered it. But that, as matter of fact, they were mistaken as to the solvency of said estate. That instead of being insolvent, it was on the day the release was executed abundantly able to pay off the debt due to them, and that the executors and their agents were then receiving large sums of money derived from the sales of the lands of the estate in Texas, and that the executors have sold large bodies of land and received large sums of money and now hold large tracts of land and other property, being assets of the estate of A. G. Burnley, deceased, and partly subject to the payment of his debts.

Whether the executors sold these large bodies of land, and received these large sums of money before or after the date of the release is not stated, but as the petition was not filed until more than three years after such date, and as the word "have" may relate as well to the time the same was filed as to the execution of the release, it must be construed as relating to that time, in view of the rule that pleadings shall be construed in cases of doubt most strongly against the pleader. By Exhibit No. 5, the letter of Mrs. Burnley, proposing the settlement of the debts growing out of the mortgage on the Mississippi plantation, the attention of appellants was specially called to the fact that she "owned a large interest in Texas lands" which at that time yielded nothing of consequence, her agent occasionally sending her a few hundred dollars from a chance sale, but that he (the agent) buoyed her up with the hope that she would be able out of those lands to pay a certain debt, and have a competency left.

On the 4th day of November, 1872, these hopes may have been realized and yet every word contained in the three letters exhibited may have been strictly true at the time they were written and the release executed. Appellants do not allege that the statements made in these letters were not true, but that the effect of the letters was to fix in their minds an erroneous impression, or an unfounded belief.

Before equity will relieve against mistake of fact it must be made to appear that the mistake was as to a material fact, and it must be such as the party could not by reasonable diligence get knowledge of when put upon inquiry, for if by such reasonable diligence he could have obtained knowledge of the fact, to relieve him would be to encourage culpable negligence. Story's Equity Juris. 146.

Appellants were informed that the executrix of Burnley's will held a large interest in Texas lands. They might have ascertained the extent of this interest by inquiry. They failed to make inquiry and now ask a court of equity to interpose in their behalf, because these lands have turned out to be more valuable than they then anticipated that they would. They do not charge that they were lulled into confidence by the fraud or misrepresentations of the party with whom they dealt, and their petition shows upon its face that they seek the aid of a court of equity to release them from the effects of a paper voluntarily executed, upon a valuable consideration, without fraud and without mistake as to any matter about which they could not have been fully advised had they chosen to make inqury, in order that they may be enable to make profit by the unconscientious prosecution of a legal advantage they would hold, were they to obtain the relief sought.

Considering the petition in connection with the exhibits, it presents no reason for the interference of a court of equity, and as it also manifests the fact that there is a complete defense to the action that might be prosecuted at law, for the recovery of any balance remaining unpaid on the mortgage debts, after the sale of the Mississippi plantation. The general demurrer was properly sustained, and as appellants failed to amend, their petition was properly dismissed.

Judgment *affirmed.*

*Brown, Julian,* for *appellant.*

*James,* for *appellee.*